Argued 10 November; decided 8 December, 1902.

### RUCKMAN v. IMBLER LUMBER COMPANY.

[70 Pac. 811.]

OPINION EVIDENCE OF NONEXPERTS* ON VALUE AND WORTH OF USE.

1. Opinion evidence may properly be received from witnesses who are not experts residing in a certain community as to the value of articles in use among the people there, and also as to what the use of such articles is worth: *Burton* v. *Severance*, 22 Or. 91, distinguished.

QUALIFICATIONS FOR EXPRESSING AN OPINION.

2. Where a witness testified that he did not know the value of the use of an engine and boiler of the size of that for the use of which the action was brought, but that he did know the value of the use of engines and boilers of less capacity, in that vicinity, he was not disqualified, by reason of his answer that he did not know the value of the engine and boiler in question, from expressing his opinion, based on his knowledge of the use of smaller engines and boilers.

PAROL EVIDENCE VARYING WRITINGS.

3. Where the terms of an agreement have been reduced to writing, neither the parties nor their successors nor representatives can vary them by parol evidence, in the absence of latent ambiguities.

WAIVING OBJECTION BY NOT DEMURRING.

4. Objections to incompetent testimony are not waived by pleading over instead of demurring to the allegations in support of which such testimony is offered.

From Union: ROBERT EAKIN, Judge.

This is an action by R. D. Ruckman against the Imbler Lumber Company for $600, the alleged reasonable value of the use of an engine and boiler for one year from November 10, 1899,

---

*NOTE.—That the opinions of witnesses who are not experts are sometimes received to prevent a failure of justice is shown by cases cited in footnote to *Higginbotham* v. *State*, 89 Am. St. Rep. 237, 242. See also *Jenney Elec. Co.* v. *Branham*, 33 L. R. A. 395.—REPORTER.

and the sum of $250 as damages for injuries thereto. The answer, after denying the material allegations of the complaint, states substantially the same facts as in the case of *Ruckman* v. *Ormond,* 42 Or. 209 (70 Pac. 707), and further avers that at the time French Bros. agreed to purchase the property it was understood that plaintiff would secure the release of the liens thereon within six months from the time the contract was entered into; that Ormond, having paid the sum of $300 on account of the purchase price, assigned all his interest in the property to the defendant corporation, which tendered to plaintiff the remainder due thereon, less two months' rent, and demanded a release of said liens, but, upon his refusing to comply therewith, defendant, on November 10, 1900, returned said property to plaintiff, who received the same, and thereby canceled the contract of purchase. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a judgment for plaintiff in the sum of $385, and defendant appeals.                          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. D. Slater.*

For respondent there was a brief and an oral argument by *Mr. Charles H. Finn.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. At the trial, plaintiff, as a witness in his own behalf, testified that defendant was engaged in operating a sawmill, using his engine and boiler therein; that he did not know the reasonable value of the use of an engine and boiler of the same capacity as those mentioned in the complaint, nor did he know of any other engine of the same power being rented in that vicinity. He was then asked, "Do you know the reasonable rental value of an engine and boiler, for that purpose, of less power than that used, in the neighborhood?" and, over the defendant's objection and exception, he answered, "I do." "Q. Taking the reasonable value of even less horse power than that engine

and boiler as a comparison, you may state what the reasonable value of this engine and boiler was for the purpose used.'' The defendant objected to this question on the ground that it was incompetent, irrelevant, and immaterial, and that the witness was not shown to be competent; but, the objection having been overruled, and an exception allowed, he answered, ''Well, I think it was reasonably worth $50 a month.'' It is contended by defendant's counsel that the transcript shows plaintiff was not an expert, and that, having no knowledge of the reasonable value of the use of the engine and boiler in question, the court erred in permitting him to infer such value by deduction, thereby usurping the province of the jury, whose duty it was to reach the conclusion sought from a comparison of the relative capacities of the engine and boiler leased to the defendant and of those to which the witness referred. Though it has been repeatedly held that the opinions of witnesses are, in general, inadmissible, there are many exceptions to the general rule which deviations therefrom permit the introduction of this species of evidence on the ground that its omission might otherwise result, in many instances, in defeating justice. The reasons usually assigned for the admission of such testimony are based on the special knowledge, skill, or experience of the witness, or upon the impracticability of the relevant facts being so detailed as to enable the jury to draw therefrom a rational conclusion, without resorting to such method of proof: *Fisher* v. *Oregon S. L. Ry. Co.* 22 Or. 533 (30 Pac. 425, 16 L. R. A. 519; *Nutt* v. *Southern Pac. Co.* 25 Or. 291 (35 Pac. 653); *First Nat. Bank* v. *Aachen Ins. Co.* 33 Or. 172 (50 Pac. 568, 53 Pac. 8).

Necessity generally renders opinion evidence admissible to prove the value of property, the character of which and the universality of its use determine whether a witness called to estimate its worth must possess special skill or experience or only a common knowledge in respect to such property to entitle him to appraise its value in the presence of the jury: Jones, Ev. §§ 365, 389. A person of ordinary intelligence generally has such a knowledge of property in common use as to enter-

tain a proper conception of its value, which opinion he may state to a jury when the value of such property is controverted. Thus, as was said by Mr. Chief Justice Simrall, in *Cooper* v. *State,* 53 Miss. 393, in commenting upon the competency of an ordinary witness to express an opinion as to the worth of a shotgun: "In the nature of things, the value of this sort of property in such common use can be estimated by almost every man in the community." In *Ohio, etc., Ry. Co.* v. *Irvin,* 27 Ill. 178, Mr. Chief Justice Caton, discussing the same question, says: "Every one is presumed to have some idea of the value of property which is in almost universal use, and it is not necessary to show that a witness is a drover or butcher before he is allowed to give an opinion of the value of a cow. It it were a steam engine, or a diamond ring, it might be different." If the property be of such character as to render an opinion of its value by an ordinary witness competent, he will not be permitted to estimate its worth, unless he has seen it, or possesses some special knowledge of its value: *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917); *Todd* v. *Warner,* 48 How. Prac. 234; *Sanford* v. *Shepard,* 14 Kan. 228; *Haight* v. *Kimbark,* 51 Iowa, 13 (50 N. W. 577).

No rule of law can definitely prescribe the degree of information required to render a witness competent to express an opinion concerning value, but it must appear, however, that he has some acquaintance with, or knowledge of, the subject-matter, the court being the judge of his qualifications, and the jury of the weight to be given to his estimate: *Bedell* v. *Long Island Ry. Co.* 44 N. Y. 367 (4 Am. Rep. 688); *Stillwell Mfg. Co.* v. *Phelps,* 130 U. S. 520 (9 Sup. Ct. 601). As the worth of property may be proved by opinion evidence, so the value of its use may be established in the same manner: Lawson, Exp. Ev. (2 ed.) 488. Thus, in *Brady* v. *Brady,* 8 Allen, 101, it was held that in a controversy as to the sum to be paid for the use of a horse and wagon, a witness who had bought, sold, and used similar ones was competent to express an opinion of the value of such use. In *Butler* v. *Mehrling,* 15 Ill. 488, the court, commenting upon the legal principle thus announced,

say: "In valuing the property itself but little weight would be given to one who knew nothing of the property. But in valuing its use those acquainted with the kind and use of such property may be allowed to testify as to the value of the use of such property, and such opinions may be weighed together with similar opinions of those who know the property itself." So, too, in *Sturgis* v. *Knapp,* 33 Vt. 486, Mr. Justice PIER-PONT, in discussing this question, says: "The value of property, as a general rule, can be proved only by the opinion of witnesses. So, too, of the value of the use of property. Its value and the value of its use often depend much upon its location, and the circumstances under which it is or may be used. The use of property may be of much greater value to one person than to another, owing to the skill or facilities for its use possessed by the one that the other has not. To determine the value of the use of a piece of property to a particular person under the circumstances of a given case often requires the exercise of such skill and judgment that can be acquired only by experience and familiarity with the subject-matter, such as ordinary triors may not, and probably would not, possess. In such a case the opinion of witnesses competent to form such opinion would be absolutely necessary to lead the triors to a just result." A witness will not be permitted to encroach upon the prerogative of the court, or usurp the functions of a jury, and express an opinion as to the amount of damages a party has suffered in a given case: Jones, Ev. § 374; *Burton* v. *Severance,* 22 Or. 91 (29 Pac. 200). The court in *Norman* v. *Wells,* 17 Wend. 136, discussing this legal principle, say: "The amount of indemnity, where it is not capable of being reached by computation, is always a question for the jury. If there be any rule without exception, it is this; and I have been unable to find any instance where the opinion of witnesses has been received." This rule, however, has no application to the method of estimating the worth of property, for the witness, when properly qualified, may express an opinion concerning its value: Lawson, Exp. Ev.

(2 ed.) 491; *Townley* v. *Oregon R. Co.* 33 Or. 323 (54 Pac. 150).

2. The use of the engine and boiler must have been of some value concerning which a qualified witness might express an opinion, and, this being so, the question to be considered is whether plaintiff possessed such knowledge of the property as to render him competent to estimate the value of its use. The pleadings admit that he was the owner of the engine and boiler which had been used in operating the Ruckman flouring mills at Summerville, Oregon, from which place French Bros. were authorized by the lease to take the property, agreeing to pay the sum of $50 a month for its use. It will be remembered that plaintiff testified that he did not know the reasonable value of the use of an engine and boiler of the same capacity as those mentioned in the complaint, nor did he know of any other engine of the same power being rented in that vicinity. Without reflection, it might seem from this testimony that he was not qualified to express an opinion as to the value of the use of the property; but his declaration that he knew of no other engine of the same power being rented in the neighborhood where his engine and boiler were used probably explains the statement so made. The market value of all property is usually regulated by the supply of and the demand for a specific commodity of a particular class, and the value thus fixed is generally determined by a comparison of values of similar species. Plaintiff, undoubtedly acting upon this recognized method of ascertaining values, probably testified that he did not know the reasonable value of the use of an engine and boiler of similar capacity, because none of that kind, within his knowledge, were leased in the neighborhood in which his was used. The fact that he was the owner of the engine and boiler in question, and knew the value of the use in that vicinity of such property of less power, enabled him by comparison to reach the conclusion that the use by defendant of his engine and boiler was reasonably worth the sum of $50 a month, disclosing that he misunderstood the question propounded to him in relation to the reasonable value of such

use; and his ownership of the property and knowledge of the value of the use of an engine and boiler of less horse power demonstrate that he possessed some qualification to express an opinion upon the subject, the degree of which was a question to be determined by the trial court, which having concluded that he was a competent witness, its judgment in that respect will not be disturbed.

3. J. C. French appearing as defendant's witness, the following question was propounded to him: "Mr. French, what agreement, if any, was made with you, respecting French Brothers, by the plaintiff, R. D. Ruckman, at the time this lease and contract of sale were signed, in regard to Mr. Ruckman taking from that engine and boiler the liens upon it?" An objection thereto on the ground that it was incompetent, irrelevant, and immaterial was sustained, and an exception allowed, and it is contended by defendant's counsel that an error was committed in this respect. The transcript shows that plaintiff, on January 7, 1899, by a written instrument, leased the engine and boiler to French Bros., and, at the same time the following memorandum was executed by them, to wit:

Know All Men by These Presents: That, *whereas,* the party of the second part hereto has this day leased to the first parties hereto certain personal property hereinafter described, J. C. and T. A. French, as French Brothers, and first parties thereto, agree to and with the second party hereto, R. D. Ruckman, that as soon as second party secures a full release of all existing claims or liens against said property, first parties will purchase the same and pay therefor the sum of $1.000.00, one third thereof at the time of release, any rents paid in excess of two months to be deducted from first payment; one third in three months thereafter, and last payment of one third of said sum to be paid in three months thereafter, at which time title shall pass from second to first parties.

Said property consists of one boiler, one engine and all the other machinery and fixtures now used in operating the same, and located at what is commonly known as the "Ruckman Flouring Mill" site, at Summerville, in Union County, Oregon, and to be hereinafter used and possessed by first parties hereto under and by virtue of a certain lease of even date herewith, at a place in said county and state, about eight miles

from said town of Summerville, in operating a general saw-mill business.

That first parties hereto hereby hold themselves, their heirs and legal representatives firmly bounden to second party, his heirs and legal representatives in the said sum of $1,000.00, all by the terms and conditions of the above contract, and in any failure upon the part of said first parties to fully perform all of said conditions, then, and in that event, this bond shall be in full force and effect, otherwise it shall be void and of no effect.

Dated at La Grande, Oregon, January 7, 1899.

In presence of                    FRENCH BROTHERS,
    F. S. IVANHOE.             First parties by J. C. French.
                              R. D. RUCKMAN, second party.

It is alleged in the answer that the making of this agreement and the execution of the lease of the engine and boiler constituted but one transaction, and that at the time they were entered into it was understood and agreed that plaintiff would, within six months from January 7, 1899, secure a release of said liens, and transfer the property to French Bros. This averment is denied in the reply, wherein it is alleged that said liens amounted to nearly three times the value of the engine and boiler, and that plaintiff could not obtain their discharge without paying the sums due thereon, which fact French Bros., and those in privity with them at all times well knew. An examination of the agreement of French Bros., as hereinbefore quoted, will disclose that it contains no stipulation upon plaintiff's part to discharge the liens upon the property, and, this being so, was the testimony sought to be elicited from J. C. French admissible under the issues detailed? The rule is universal that, as between the parties and their representatives and successors in interest, except where an alleged mistake is controverted by the pleadings, or in case the validity of the contract is the fact in dispute, parol contemporaneous evidence is inadmissible to vary or contradict the terms of a written agreement: Hill's Ann. Laws, § 692; *Hoxie* v. *Hodges,* 1 Or. 251; *Edgar* v. *Golden,* 36 Or. 448 (48 Pac. 1118, 60 Pac. 2); *Tallmadge* v. *Hooper,* 37 Or. 503 (61 Pac. 349, 1127). But where there is a latent ambiguity in the writing, in respect

to the time or manner of the performance of its terms, or of the identity of the persons named therein, or of the subject-matter thereof, parol evidence is admissible to show the agreement of the parties in relation thereto: *Jones* v. *Dove*, 6 Or. 188; *American Contract Co.* v. *Bullen Bridge Co.* 29 Or. 549 (46 Pac. 138); *Reinstein* v. *Roberts*, 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564).

4. Plaintiff having never stipulated to discharge the liens upon the engine and boiler, there was no ambiguity in the agreement quoted, and the averment in the answer that there was a parol agreement to the contrary was demurrable, and, though issue was joined thereon, it could not be established by parol testimony, and no error was committed in refusing to permit the witness to answer the question propounded to him: *Portland Nat. Bank* v. *Scott*, 20 Or. 421 (26 Pac. 276); *Wilson* v. *Wilson*, 26 Or. 251 (38 Pac. 185).

Other alleged errors are assigned, but not deeming them important, the judgment is affirmed.     AFFIRMED.